NO. 07-00-0290-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



DECEMBER 17, 2001



______________________________




ZENON LOPEZ, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;



NO. 12,373-C; HONORABLE WILLIAM R. SHAVER, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

ON ABATEMENT AND REMAND


 Appellant Zenon Lopez was convicted of the offense of indecency with a child and
sentenced to eight years in the Institutional Division of the Department of Criminal Justice,
probated for eight years. Appellant's notice of appeal was filed on June 13, 2000. 

 We previously abated this appeal because we had not received the reporter's
record or appellant's brief, and we had been informed by the court reporter that she had
not received a deposit to pay for preparation of the record. The trial court found that
appellant still wished to pursue his appeal, and the appeal was reinstated. By letter dated
August 27, 2001, we were informed by the court reporter that she had received a deposit
for the preparation of the record and requested additional time to prepare it. That request
was granted with the reporter's record being due on October 23, 2001. By letter dated
October 23, 2001, we were informed that the reporter's record had been prepared and
would be forwarded when final payment was made. To date, we have not received a
reporter's record or a brief.

 These events require that we effectuate our responsibility to make whatever order
is appropriate to avoid further delay and to preserve the parties' rights. Tex. R. App. P.
37.3(a)(2). Accordingly, this appeal is abated and the cause remanded to the 251st District
Court of Randall County, Texas. Upon remand, the judge of the trial court shall
immediately cause notice to be given and conduct a hearing to determine whether
appellant has abandoned his appeal. If appellant has not abandoned his appeal, the court
shall further determine:

 1. If appellant's attorney of record continues to represent appellant and will
diligently pursue his appeal. If not, and appellant is not indigent, what steps
should be taken to ensure that appellant will promptly retain an attorney who
will diligently pursue the appeal and that appellant will make the necessary
arrangements to prosecute his appeal. 


 2. If appellant is indigent, whether an attorney should be appointed to
handle the appeal. If such attorney is appointed, this court should be
supplied the attorney's name, address, and State Bar of Texas identification
number. 


 3. If appellant is indigent, what steps are necessary to ensure the prompt
preparation of a reporter's record. 


 4. If any orders are necessary to ensure the diligent and proper pursuit of
appellant's appeal.


 In support of its determinations, the trial court will prepare and file written findings
of fact and conclusions of law and cause them to be included in a supplemental clerk's
record. In addition, the trial court shall cause a transcription of the hearing to be prepared
and included in a reporter's record. The supplemental clerk's record and reporter's record
should be submitted to this court no later than January 15, 2002. 

 It is so ordered. 

 Per Curiam

Do not publish.


 Eventually, the petition came for hearing. Kim, Darla, and Paul appeared either
individually or through counsel. After hearing the evidence and argument of all involved,
the trial court appointed Kim managing conservator.

Standard of Review

 Generally, when courts resolve questions regarding conservatorship, the best
interest of the child is the primary consideration. Tex. Fam. Code Ann. § 14.07(a)
(Vernon 1996); Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990). Moreover, the trial
judge enjoys wide latitude in determining what those best interests are. Gillespie v.
Gillespie, 644 S.W.2d 449 (Tex. 1992). Indeed, we cannot interfere with his ultimate
decision unless we conclude that he abused his discretion in reaching it. In Interest of
Doe, 917 S.W.2d 139, 141 (Tex. App.--Amarillo 1996, writ denied). And, discretion is
abused only when the determination is arbitrary or unreasonable or fails to comport with
guiding rules and principles. Id. (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241-42 (Tex.1985)). In other words, it is not enough for us to simply disagree with
the outcome. Rather, we must conclude that the decision lacked basis in fact or law or
involved a misapplication of fact to law. 

 Next, in debating whether to appoint a parent or nonparent as managing
conservator, statute requires the court to presume that the best interests of a child lay in
appointing a biological parent. Tex. Fam. Code Ann. § 153.131(a) (Vernon Supp. 2001). 
Yet, the presumption is rebuttable. For instance, proof that such an appointment would
significantly impair the child's physical health or emotional development negates it, id.;
Brook v. Brook, 881 S.W.2d 297, 298 (Tex.1994), as does proof that the parent voluntarily
relinquished actual care, custody or control of the child for one year and the best interests
of the child would be served by appointing a nonparent as conservator. Tex. Fam. Code
Ann. § 153.373(1) & (2); In re V.L.K., 24 S.W.3d 338, 341-42 (Tex. 2000). 

 Also, there is another situation wherein the presumption does not apply. It concerns
the previous appointment of a managing conservator. That is, if such a conservator was
previously appointed, the decision to modify that appointment is unaffected by the
presumption. In re V.L.K., 24 S.W.2d at 342. And, should that circumstance arise and
should the prior conservatorship be joint, the party seeking a modification need only show
that 1) the appointment of another would be a positive improvement for and be in the best
interests of the child and 2) the circumstances of the child, parent or conservator materially
or substantially changed which change rendered the current conservatorship unworkable
or inappropriate, the present living environment of the child may endanger the child's
physical health or significantly impair his emotional development, or the terms of the
existing conservatorship order were substantially and inexcusably violated. Tex. Fam.
Code Ann. §156.203(1) & (2).

Application

 C.R.T.

 As previously mentioned, Darla and Paul were appointed joint managing
conservators of C.R.T. when they divorced. Given this, the presumption that a natural
parent should remain conservator is inapplicable. In re V.L.K., supra. Furthermore, as
one of the initial managing conservators, Darla was obligated under statute, common law
and the divorce decree to care for, control, protect, and reasonably discipline the child. 
Tex. Fam. Code Ann. §153.074(1). So too was she duty bound to support him financially,
physically, medically, and emotionally. Id. at §153.074(2). Despite these obligations
however, Darla voluntarily relinquished possession, care and custody of C.R.T. to Kim in
the summer of 1998. Since that time, she has also failed to provide Kim or C.R.T. any
support. None of these acts were excused or authorized by any trial court. So too did they
violate the terms and conditions of the trial court's prior orders. Given this, it can be said
that the elements of §156.203(1)(B) of the Family Code have been satisfied and that the
terms of the existing conservatorship order were substantially and inexcusably violated.

 Similarly, much of the same evidence serves to meet the criteria of §156.203(C). 
For instance, Darla has not supported her children over the years. More importantly, she
deigns to work at a job which pays her no wage, and nothing appears of record suggesting
in any way that she owns sufficient assets which would allow her to financially support
C.R.T. (4) Nor can she legally drive a motor vehicle, apparently by her own choice. These
circumstances not only were non-existent when the trial court initially appointed her a joint
conservator of C.R.T. in 1995 but also are material changes which would have reasonably
allowed a trial court to conclude that its prior order had become unworkable or
inappropriate. (5) 

 To the foregoing we couple the evidence that C.R.T., and the other children, have
found stability, care, protection (both emotional and physical), and support (both financial
and emotional) in the home of Kim. And, given this combined evidence, we conclude that
the trial court had basis to reasonably find that permitting Kim act as managing
conservator constituted a positive improvement for and was in the best interest of C.R.T. 
Thus, the trial court's decision evinced no abused discretion.



 S.J.T. and D.C.T.

 Unlike their brother C.R.T., S.J.T. and D.C.T. were not subject to the 1995 divorce
decree since they were born thereafter. Nor can it be said that Darla voluntarily
relinquished actual care, control and possession of the two girls to Kim for a period of one
year given that Kim was appointed temporary managing conservator before that period
expired. So, the presumption that a parent should be appointed managing conservator of
the two would initially apply. Yet, evidence of record warranted the trial court's implicit
finding that the presumption was rebutted. That evidence consisted of Darla's utter failure
to support her children though having the duty to do so by law, Bailey v. Bailey, 987
S.W.2d 206, 208 (Tex. App.--Amarillo 1999, no pet.); Tex. Fam. Code Ann. §153.074(2),
and temporary court order. Furthermore, nothing of record begins to suggest that some
obstacle prevented her from earning a wage sufficient to assist in the provision of her
children. Rather, her failure can be characterized as a refusal to obtain paying
employment and, thereby, support her children. 

 Furthermore, that her attitude and conduct towards her children would continue is
exemplified by her own words and acts. As to the former, she testified that her parents
would provide the needed finances and that she intended to live with her children in her
parents' three bedroom house "forever." This hardly suggests that she will assume the
obligation of supporting anyone, much less the children. As to her acts, we again refer to
how she left the care of not only C.R.T., S.J.T., and D.C.T. but also her oldest boy, T.J., 
to others. These recent prior actions, at the very least, constitute indicia permitting one
to reasonably gauge her future conduct viz-a-viz her children. May v. May, 829 S.W.2d
373, 377 (Tex. App.--Corpus Christi 1992, writ denied). 

 Added to the evidence that Darla lacked ready means to personally support her
offspring and expected others to care for them is testimony that she failed to investigate
the medical condition of her children until told to do so by Kim, that this 31 year old person
could not legally drive her children anywhere (such as to school or to a doctor's office)
since she had no driver's license, and that she had been dependent upon intoxicating
substances for more than the majority of the lives of S.J.T. and D.C.T. Failing to support
one's children has been considered indicia illustrating that appointment of the parent
would significantly impair the child's physical health. Thomas v. Thomas, 852 S.W.2d 31,
35-36 (Tex. App.--Waco 1993, no writ). So too has evidence physical abuse, severe
neglect, abandonment, drug and alcohol abuse, and very immoral behavior been deemed
indicative impairment upon the child's health. Id.; May v. May, 829 S.W.2d at 376-77. 
Darla's drug problem, her abandoning C.R.T., S.J.T., and D.C.T. to Kim, her abandoning
T.J. to her parents, her failure to provide support to C.R.T., S.J.T. and D.C.T., her utter
dependence upon her parents for her well-being, and her exhibition of a want of personal
responsibility and emotional development are indicia of like ilk. They too evince potential
impairment of health and emotional development sufficient to justify the appointment of a
third-party as managing conservator instead of a parent. They also provide evidence
rebutting the presumption that Darla should be the managing conservator of S.J.T. and
D.C.T. And, when coupled with the evidence of stability, support, and nurturing offered by
Kim, we cannot but find that the trial court's appointment of Kim constituted a positive
improvement, furthered the best interests of the children, and exemplified a legitimate
exercise of discretion. 



 Accordingly, the judgment executed below is affirmed.



 Brian Quinn

 Justice


Publish.
1. Paul did not appeal the order at issue. 
2. Prior to marrying Paul, Darla gave birth to a young male child, T.J. She was sixteen at the time,
and whether the father was Paul or someone else is unknown. Nevertheless, T.J. did not live with his mother
and Paul while they were married. Instead, Darla left him with her parents to raise. 
3. Nothing of record suggests that Darla is unable to secure a job which pays its employees with
money instead of room and board. Nor does the record reflect that she ever attempted to search for such
employment after returning to live with her parents. Rather, the evidence reveals that her financial status
is of her own making. And, when asked at trial about how she would support the children given her utter lack
of tangible income, she stated that her parents would provide for them and that she intended to live with her
parents "forever." That she believes her parents would support the three children is of particular interest
since nothing of record indicates that they have ever provided Kim with any financial help since C.R.T.,
S.J.T., and D.C.T. began living with her. Indeed, rather than attempt to gain possession of and care for her
youngest granddaughter after her birth, Darla's mother opted to have the child live with Kim and the other
children. 
4. To the extent that Darla opined that her parents would provide the needed financial backing, the
trial court could have easily rejected the proposition given the want of evidence suggesting that they had
provided any support to their grandchildren. 
5. That Darla 1) retreated to the home of her parents at the age of 31, 2) utterly relies upon them for
food, shelter, transportation and the like, and 3) looks to them to as the means of support for her children
is also troubling. At the very least, it suggests that she herself lacks sufficient mental and emotional
development to care for and guide her offspring. Needless to say, parenting is a joy and struggle. All would
readily accept the joys inherent in parenting. Yet, none should be permitted to avoid the duties owed their
children by voluntarily foisting the struggles upon others, as did Darla when she left not only C.R.T., S.J.T.,
and D.C.T. but also T.J. with others.